IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 1, 2020

IN RE EDWARD R.

Appeal from the Juvenile Court for Maury County
No. 18-JV-123      Douglas K. Chapman, Judge
_____

No. M2019-01263-COA-R3-PT
_____

KRISTI M. DAVIS, J., concurring in part and dissenting in part.

Although I concur with the end result reached by the majority in this case, I write separately to address two issues. First, while the majority correctly concludes that Mother's parental rights should be terminated based upon the persistent conditions ground, more analysis is warranted in light of the sparseness of DCS's case.[1] Second, I must dissent from the majority's decision to conclude, based on *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280 (Tenn. Ct. App. June 20, 2018), that DCS satisfied its burden of proving that Mother failed to manifest a willingness and ability to assume legal or physical custody of her children.

Turning first to the ground of persistent conditions, the majority correctly explains that

> [t]ermination on this ground prevents a child from lingering in uncertainty as a foster child if his or her parent cannot demonstrate an ability to provide a safe and caring environment for the child within a reasonable time. *In re Leroy H.*, No. M2017-02273-COA-R3-PT, 2018 WL 3700917, at *10 (Tenn. Ct. App. Aug. 3, 2018) (citing *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008)). Recognizing that children need a permanent stable environment, "the question is the likelihood that the child can be safely returned to the custody of the parent, not whether the child can safely remain in foster care with periodic visits with the parent." *In re James V.*, No. M2016-01575-COA-R3-PT, 2017 WL 2365010, at *8 (Tenn. Ct. App. May 31, 2017). This

---

[1] I take no issue with the majority's conclusions regarding the first two grounds for termination, abandonment by failure to establish a suitable home and substantial noncompliance with the permanency plan, nor do I disagree with the majority's conclusion that termination is in the best interests of the children.

1

ground for termination focuses on the *results* of the parent's efforts at improvement rather than the mere fact that he or she has made them. *In re Abigail F.K.*, 2012 WL 4038526, at *20 (citing *In re Audrey S.,* 182 S.W.3d at 873-74). "While [the parent's] efforts are part of our analysis on substantial noncompliance with the permanency plan, the ground of persistent conditions focuses on whether the parent's efforts have been fruitful[.]" *Id.*

This ground for termination requires us to examine whether the petitioner has shown the parent's "continued inability to provide fundamental care to a child[.]" *In re Katrina S.*, No. E2019-02015-COA-R3-PT, 2020 WL 5269236, at *6 (Tenn. Ct. App. Sept. 3, 2020) (citing *In re Navada N.*, 498 S.W.3d 579, 605 (Tenn. Ct. App. 2016)). It is of no consequence whether the parent's failure is willing. *Id.*

In the present case, the children were removed from Mother's care primarily due to drug exposure and continued substance abuse in Mother's home. It is undisputed that Mother has struggled with drug addiction for several years and that although she has attempted various treatment programs, there is no proof that she has completed any. Additional conditions underlying the removal of the children were Mother's unstable living situation and mental health issues.

However, the proof offered by DCS as to Mother's circumstances at the time of trial was woefully deficient. As the majority aptly points out, the testimony of DCS's only witness, Ms. Rooker, spans less than fifty pages of transcript, and it is undisputed that Ms. Rooker's involvement with Mother's case was in a supervisory role rather than direct management of the case. Ms. Rooker's testimony regarding the drug tests administered to Mother was equivocal, and the drug screens relied upon by DCS were not entered into the record. Moreover, Ms. Rooker candidly admitted that DCS had not visited the home in which Mother had been living for approximately six months leading up to trial, meaning there was essentially no proof offered that Mother's current living situation is untenable for the children. Ms. Rooker was also candid about the fact that she communicated very little with Mother throughout the case because the family service workers are the ones who coordinate appointments with the family, and because Mother tended to be difficult to reach. Overall, Ms. Rooker's testimony does not inspire confidence that DCS had much knowledge regarding whether Mother was, by the time of trial, able to provide a safe and caring environment for the children. To that point, Mother testified that she was working her twelve-step program, that she had stable housing, and that she was attempting to address her mental health issues. The trial court did not find that Mother was not credible.

Notwithstanding the deficiencies in DCS's case, however, Mother's own testimony at trial is sufficient for me to conclude that she is not presently able to provide fundamental care to her children. Mother testified that she is still very overwhelmed by the tasks before her and that the proceedings had "mentally [thrown her] off a little bit." As the majority

points out, Mother also testified that she is still dealing with "a lot of issues." Importantly, Mother explained that she is still trying to "process" and "reorganize, rehabilitate" herself. Perhaps most importantly, Mother further testified that she is half-way through a twelve-step program that will take her six months to complete and that she will likely need additional time after completion before she will be able to assume full responsibility for the children. Stated simply, Mother's own testimony is replete with admissions that she still struggles with the conditions that underpinned the removal of the children from her custody and that she will not be ready to provide a stable home to them for at least a year, probably more.

Consequently, in this particular case, Mother's admissions amount to clear and convincing evidence that Mother is presently unable to "provide a safe and caring environment for the child[ren]." *In re Navada N.*, 498 S.W.3d at 606. Under different circumstances, this Court has held that a parent's own actions and testimony at trial can amount to sufficient proof of grounds for termination and/or a best interest determination, even when the proof offered by the petitioner is scarce. *See, e.g.*, *In re Katrina S.*, 2020 WL 5269236, at *11 (concluding that mother's own "admissions and testimony" were sufficient to constitute clear and convincing evidence of a different ground for termination when there was little additional evidence offered by petitioners); *In re Briana H.*, No. M2017-02296-COA-R3-PT, 2018 WL 4191227, at *14–15 (Tenn. Ct. App. Aug. 31, 2018) (concluding that while DCS's proof of best interests was "woefully deficient," mother's shortcomings were "so severe" that her own actions established termination was in her children's best interests). Because the ground of persistent conditions focuses on results rather than efforts, and because Mother admits that her efforts have not yet been fruitful, I concur with the majority's conclusion that the trial court correctly terminated Mother's parental rights pursuant to this ground.

Second, I must dissent from the majority's conclusion that the trial court properly terminated Mother's parental rights based upon Tennessee Code Annotated section 36-1-113(g)(14). This statute provides that termination of parental rights is appropriate where

> [a] parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Separate panels of this Court have interpreted and applied section 36-1-113(g)(14) differently. *Compare In re Ayden S.*, No. M2017-01185-COA-R3-PT, 2018 WL 2447044 (Tenn. Ct. App. May 31, 2018) (concluding that the first prong of section 36-1-113(g)(14) requires the petitioner to prove *both* an inability and an unwillingness of the parent to assume custody or financial responsibility for the child), *with In re Amynn K.*, 2018 WL 3058280, at *13 (concluding that the basic requirement of section 36-1-113(g)(14) is that

the parent must manifest both an ability and willingness to assume custody of a child). The result of the *Amynn K.* decision is that under some circumstances, a parent's fundamental right to the care and custody of their child can be terminated if it is determined that the parent is willing, but for some reason unable, to assume legal or physical custody or financial responsibility for the child. *See In re Braelyn S.*, No. E2020-00043-COA-R3-PT, 2020 WL 4200088, at \*13 (Tenn. Ct. App. July 22, 2020) ("Such an interpretation allows possible termination of the parent-child relationship based on financial hardship alone, without any consideration of the willfulness of that situation.").

Although the majority opinion suggests that the split of authority regarding this ground for termination has been resolved in favor of *In re Amynn K.*, I disagree. *See, e.g.*, *In re Allyson P.*, No E2016-01606-COA-R3-PT, 2020 WL 3317318, at \*9 (Tenn. Ct. App. June 17, 2020) (reversing the trial court's decision to terminate a mother's parental rights based upon this ground when the proof showed that mother was unable to assume custody of her child but was not unwilling); *In re Braelyn S.*, 2020 WL 4200088, at \*11 (collecting cases adopting each approach, but ultimately adopting the reasoning of *In re Amynn K.*).

I agree with the line of cases stemming from *In re Ayden S.*, requiring the petitioner in a termination action to prove both an inability *and* an unwillingness of the parent to assume custody or financial responsibility for the child. As the *In re Braelyn S.* court aptly noted, the construction of section 36-1-113(g)(14) applied in *Amynn K.* is strained and troublingly creates the possibility for termination of parental rights when a parent is completely willing, but for some reason unable, to assume custody of their child. 2020 WL 4200088, at \*13. The rights at stake in termination of parental rights cases are fundamental and "more precious than any property right." *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016) (citing *Santosky v. Kramer*, 455 U.S.745, 747, 102 S. Ct. 1388, 71 L.Ed.2d 551 (1972)). In light of the profound importance of the interests at stake in termination proceedings, section 36-1-113(g)(14) should be interpreted according to its plain and unambiguous language and in a way that preserves those rights to the extent possible.

Applying the reasoning of *In re Ayden S.* and its progeny to the case at bar, I would conclude that DCS failed to present clear and convincing evidence that Mother failed to manifest both a willingness and an ability to assume legal and physical custody of her children. While the majority correctly concludes that the evidence proves Mother is currently unable to assume custody of the children, there is no evidence that Mother is unwilling to assume custody. It is undisputed that since being separated from her children, Mother has participated in regular visitation with the children despite marked obstacles in her personal life, including at times being homeless and without transportation. Mother would bring snacks to the visits and was affectionate with her children. Mother testified that she is actively participating in a twelve-step program to address her substance abuse issues and further testified that she has come to terms with the fact that she has serious struggles with her mental health and plans to address that. Mother's willingness to

4

acknowledge and take responsibility for her issues, coupled with the fact that Mother has maintained contact and has a loving relationship with the children, militates against a finding that Mother is unwilling to assume custody of the children. "DCS'[s] burden was to prove that Mother failed to manifest both elements and, while her inability to assume custody was clear, DCS failed to prove that Mother was not willing to assume custody." *In re Allyson P.*, 2020 WL 3317318, at *11. Accordingly, I conclude that there is no clear and convincing evidence to support termination of Mother's parental rights pursuant to section 36-1-113(g)(14), and I would reverse the trial court's holding as to this ground.

Because DCS proved one ground for termination of parental rights, however, and because I agree with the majority's conclusion that termination is in the best interests of the children, I concur in the ultimate result.

KRISTI M. DAVIS, JUDGE